Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and  Be seated. I want to welcome everyone to the Fourth Circuit Court of Appeals this morning. We have a limited docket. I'm sure it'll be high quality, so it's good to have you with us. The case or argument is number 22-2010, Marshall v. Georgetown Memorial Hospital. Mr. Bright, good to have you with us, sir. Thank you, sir. May it please the Court, my name is Tom Bright. I'm with the Ogletree Law Firm out of Greenville, South Carolina, and it's my privilege to represent Georgetown Hospital, Tideland's Health, which is a 2,000-employee health system on the Grand Strand of South Carolina. I must apologize to the Court today with changing weather and everything else. I've all of a sudden come down with something, so my voice is starting to crack and everything else, and I'm coughing, so I apologize for that. The issue on appeal here is, did the District Court commit reversible error in concluding that the parties never agreed to arbitrate issues flowing out of the application for employment that Ms. Marshall submitted in 2020? Now, the facts relevant to that issue are very simple and very short. In April of 2016, Ms. Marshall went to the hospital's online portal and filled out an application for employment with all the information that usually is involved and included in an application. She filled it out and provided that information, and at the very top of that application, there is a notice that says, Arbitration Notice. This application and application process are subject to arbitration. That's significant fact number one. That language you will see at Joint Appendix 202, and what we've provided for you there is the actual screenshot of what you would see as you were looking at your computer as you were filling out the application because the finished applications that she submitted would not have included some of the language at the top because they've already been concluded and already submitted. The language is in all caps. It's underlined. It's in bold print. It is located four lines below the submit button that Ms. Marshall used in 2020 when she submitted her 2020 application. Counsel, one thing that confuses me about this case is that your argument seems to be just a bit of a moving target. So now you're saying she pushed the button at the top to submit the application, but your original argument, well actually your second argument, your first argument was the 2016 agreement carries forward. That gets rejected. You don't object to that. Your second argument is she would necessarily have scrolled past the 2016 information because she pushed the submit button at the bottom. But now your argument is she pushed the submit button at the top? That's the evidence she submitted, and again, we could, if we were in a trial situation, be comparing I'm just trying to figure out what your argument is. The argument is But before the magistrate, the second time you introduce an affidavit saying she absolutely had to have hit the submit button at the bottom. That is no longer your position? That is no longer our position, and I would say that I think the hospital system So you're a moving target? Yes, sir. So you're a moving target? Again, I think that in this particular circumstance, we are accepting her statement that she touched Why is it okay that you've had, by my count, three different positions in this case? The confusing factor in this case, and it's part of the reason why you have so many different applications in the Record on Appeal, is that they maintain a record in-house at the hospital, and it is reprinted every time someone comes in. And so I think that the hospital system had difficulty finding and identifying which is the right one to go with each of those applications that she submitted, because they all contain the same language. They all are identical, except for changes that she made. And so there is both a submit at the bottom of the application, and there is a submit button at the top of the application. The hospital's position was she had to have read it and submitted the button at the bottom. She says, no, there's a submit button at the top, and that's what I read. We are accepting that for purposes of this argument in order to not have any disputed facts. As a factual matter, how could you not accept it? Your own screenshot, the affidavit says she had to hit the submit button at the bottom, but your own screenshot shows that that's not true, that she could have hit the one at the top. She could have hit the one at the top, and that's why we're accepting that as a factual statement. If you scroll down below the information that she provided... Can I ask you one last factual question? Yes, ma'am. It turns out, right, that there's this weird twist where she might have hit neither submit button, or at least a person could generate this document, this application, without ever hitting submit. If you hit save and return, you get the same document. What do I do with that? Well, what happens is it creates a record within the hospital, but it is not a record that goes to anyone to be considered for employment, because all it is is someone accessed the system, started putting in some information, but if they never submit and they hit save and come back later, then it never gets sent on and put into the application process. It's recorded by the hospital, but it's not submitted to the application process and doesn't progress any further. So it seemed to me that the magistrate was saying the magistrate judge made a finding that we don't really know. When you look at an application like this, you can't tell whether someone hit the submit button, but you think that's wrong, that the fact that it went further in the process shows that we can tell that someone hit the submit button? Not only that, but we have her counsel's affidavit that was submitted to the lower court where he says that she did, in fact, hit that submit button. I understand that, but are you disagreeing with the magistrate judge that just as sort of a general matter, a document like this could be generated even if nobody hit the submit button? Yes, but it would not have gone into the application process because the submit button had not been pushed. The other undisputed facts in this case are that all anyone would have to do to see the full-blown arbitration provision, which the district court, the magistrate, and Ms. Marshall agree was a binding arbitration provision, was scroll down one more page. It didn't require a hyperlink to go someplace else. It didn't require anybody to do anything except scroll down. And what we have to remember is that there was language at the top that said this is subject to arbitration. It didn't say this is subject to arbitration. It said something like this application process is subject to arbitration pursuant to the South Carolina Uniform Arbitration Act. How does that convey that there is an offer as part of this application process that there is an offer of an arbitration agreement in 2020? Well, the issue before this court is whether or not, it's a two-step process. Number one, did Ms. Marshall have reasonable notice of the application that the application process and the application she submitted in 2020 was subject to arbitration? I'm really pointing out that by having that language at the top, that's something that would put someone on inquiry notice that says, oh, it says arbitration. What do I have to do to find that? Where's that language? I have to go look for that. We have to remember, too, that back in 2016, she had actually read this exact same language when she had applied for the job in 2016. This is not a situation where she filled out one application and then she filled out another one. This was the exact same application that she had submitted in 2016. Not going to be the exact same application when it had been four years between them. Yes, sir. I mean, you'd have to fill out, answer some questions about where you've been for the last four years, what you've been doing. All she changed... I mean, you have to be updating the thing. Well, and exactly that. What she was provided was a password that allowed her access to that application so she could pull it up anytime she wanted to. She actually pulled it up in 2019. She had pulled it up and gone in another time in 2019. My only point is... 2008 or 2012 or something. Yes. She had worked for us... Yes, sir. She had worked there... Yes, sir. She had. Again, I'm not sure that that's relevant to the issues in this case, but yes, she had... What happened to you with the magistrate judge and with Judge Gergel, have you done anything to change those forms? Have you fixed anything? Have they changed anything? Yes. Have you changed anything? Yes, they have changed. Your client changed anything because of the results you got with the magistrate judge... Yes, Your Honor, they have. And with Judge Gergel. Yes, they have. Now, anytime anyone accesses, they have to go through the I accept process that she had done the first time around. And I think that's... Can I ask you a question? So, I'm assuming hypothetically, at least. Yeah, yeah, you should have... Someone should scroll down to the bottom. But the thing I keep getting hung up on is if you scroll down to the bottom, all you see is an agreement dated 2016. And so how do you know... And as you explain the process, you understand you're looking at your old application. So how do you know that there's an offer for an arbitration agreement in 2020? I mean, the magistrate judge held in the first ruling, right, when your argument was different, when it was that the 2016 agreement extends forward. The magistrate judge said, no, it doesn't. And one of the reasons it doesn't is because the person going through this process would have no notice that this old 2016 agreement has any continuing effect. And you didn't object to that. So, I mean, that's just now an undisputed fact. So I don't understand what it is about scrolling down that would put someone on notice. Oh, this is a new agreement for 2020 that you should either accept or reject. What I would point out is it's a practical matter. What she was doing, she was applying for another job. It's as if she had a paper application and she had filled it out and she had submitted it. And it was subject to arbitration because it's right there in the language of the agreement. Right there in the language of the agreement is that it's dated 2016. That in 2016, she was subject to arbitration. Like if maybe if someone had crossed that out and put in 2020, had it been a paper application. But I don't understand how the existence of a 2016 agreement puts you on notice of a 2020 agreement. I don't think it's the agreement that is at issue in that sense. What it is, is did she have noticed that there was a provision that arbitration applied? Where would she find that provision? If she could do all the due diligence, was she supposed to call and say, hey, I see that in 2016, there was an agreement. Does that apply in 2020? What kind of duty to inquire did she have? It's as if she was coming in and applying for a new job, which she was. And she was filling out a new application, which basically she was. And she sees a notice at the top that says this is subject to arbitration. All she has to do is scroll down and see, aha, the quid pro quo for applying for a job. I'm not getting the aha moment. If you see a 2016 agreement, you'd be like, OK, I wonder what the terms are for 2020. Oh, they're not in the contract. Your Honor, my only response to that is as a practical matter. When the question is, did she have reasonable notice that arbitration covered this process? By having that notice at the top, having read it before, having seen it before, having it be the exact same application that she'd read before, she knew that language was there. And by engaging in the process of saying, here, please take my application and consider me for employment. She was saying, I am submitting to this process that you say is subject to arbitration. And that's basically our position. The center point of Ms. Marshall's position is, I didn't read it. And we've got several cases. I really don't think that's their position. I understand their position to be, if I read it, it would not put me on notice, A, of the fact that there was a separate 2020 agreement on offer, and B, of what the terms of that offer might be. I mean, absolutely no disrespect. But if I'm going to take an application that I'm submitting, and I see that there's language in there that says, this is subject to arbitration, and I submit it to the people that I want to get a job from, I would understand that they're telling me that that's a condition of, that's a quid pro quo for the application process. And the act of doing something to submit the application, which she did by pushing the submit button, she's saying, I want to be considered for a job. And she is submitting to the process that the hospital has laid out in the arbitration provision, which everyone admits, clearly states that the process is covered by arbitration. If I did that, I would know I'm now subject to arbitration, whether I sign it or not. And we have cases that stand for the proposition that the FAA doesn't require someone to sign something. It just says they have to have reasonable notice of it. And if they are on inquiry notice to look a little further, which in this case would have been nothing more than scroll down and read it, she would have understood. In my position, our position is she should have understood if she scrolled down and read that language, and she's asking to be a part of the application process, and she's looking for a relationship ongoing with the hospital that she understands that the quid pro quo for being involved in the application process is the arbitration language. And again, I think the second question that has to be answered is was there an agreement? And I think that's part, Justice Harris, part of what you're asking about is the process of the agreement. And our position is that by pushing the submit button, having noticed that the arbitration provision is there, having read the arbitration provision as she admits that she did back in 2016, she knows it's there. She knows what it says. She's asking to be a part of the process going forward. She submits that application. That's the conduct that she's basically saying, I'm going to agree to this process because I understand it's there. I know this application is subject to that process. And by my conduct in submitting, hitting the submit button was telling you I am agreeing to that process. And I think that the question is whether or not there was evidence that any reasonable person would have viewed her conduct as submitting to her application, as agreeing to the arbitration process that was in writing, that was acknowledged as acceptable by the court. So the two questions is, did she have reasonable notice? Our argument is it was at the top. She'd read it before. It's the exact same application. She acknowledges that it was a full-blown binding arbitration provision. She had reasonable notice that it was there. Number two, by way of her conduct of hitting submit, she was agreeing to that process, knowing it was the quid pro quo for the employment application. I see that my time is short. I thank you. Thank you, Mr. Bright. Ms. Leighton. Good to have you with us, Ms. Leighton. Good morning and may it please the court. I'm Shelby Leighton on behalf of Plaintiff Appellee Sabrina Marshall. As the party moving to compel arbitration, Tidelands has the burden of proving that when Ms. Marshall submitted her application for employment in 2020, a valid agreement to arbitrate was formed. To do so under South Carolina law, it must prove that it provided Ms. Marshall actual notice of its offer to enter into a binding agreement, the specific terms of that offer, and the conduct on her part that would manifest assent to the offer. Tidelands' briefs did not dispute that it must show actual notice, yet it has failed to do so for any of these three essential elements of contract formation. For that reason, the district court's order should be affirmed. But even Tidelands' attempt to mani... So what is the best authority for the fact that actual notice is required here?  That reasonable notice means actual notice, and that was recently applied in the Lampo case. In the context of unilateral modification of an employment agreement by way of an employee handbook, do you have any authority applying it outside that context? Yes, Your Honor. So there was recently a South Carolina Court of Appeals decision, an unpublished decision in Wanderlove Travel LLC, which is at 23 Westlaw 143-1409, where it was a per curiam opinion where the court applied an actual notice standard to contract formation and found that no contract had been formed. But even putting that aside, the South Carolina law requires reasonable notice of these things for contract formation, and there's no basis in South Carolina law to distinguish between reasonable notice at the contract formation stage and reasonable notice at the contract modification stage. And in any event, Tidelands has not disputed that actual notice is the correct standard, nor have they put forth in their briefs any other standard that might apply here. Their brief is arguing inquiry notice, and that was the argument today. We've argued in the alternative for inquiry notice, but they do not actually cite any standard or inquiry notice or actual notice cases. But in any event, even if inquiry notice is required, Tidelands has failed to show any of those three elements that are all required to form a contract. First, if you look at what the application looked like at JA-202, the part of the website that was visible looked like a fillable employment application. It did not put Ms. Marshall on notice that it was an offer to enter into a contract. Tidelands argues that a party is required to read a contract before signing, but that rule only applies once the party knows that they are being presented with a contract. And here, that was not the case. And the website, again, had these fillable entries that Ms. Marshall could fill out. She updated the date that she was available to start employment, which is on this first page in JA-202. She did not have to scroll down to update that. And then she could hit the submit button at the top of the page without ever seeing anything that looked remotely like a contract. And as Justice, or then Judge Sotomayor said in the SPECT case, she's not required to scroll down if there's no reason to think that below her application there would be a contract or terms or anything like that. And there's nothing- Why doesn't the arbitration notice at the top, why doesn't that count as an indication that there might be an arbitration agreement in here? I mean, it does say this process is subject to arbitration. Wouldn't that put a person of reasonable diligence on notice? Like, hey, I should maybe scroll down and see if there's an arbitration agreement in here. It's black letter law that you have to be on notice, not just of the contract, but what the terms of the contract are. The idea would be that notice puts you on inquiry notice, scroll down, and then there is a second step to the argument that once you see the 2016 agreement, you understand those are the terms. Sure. So at the top, it just says this application is subject to arbitration under South Carolina Arbitration Act. That doesn't put someone on notice that there are contract terms, more specific terms further below that that they should scroll down to read. It just puts them on notice. I think it sounds like there's a statute that makes this application subject to arbitration. It doesn't say, look, you know, they could easily have said below this application are terms and conditions that you should read. Make sure to read the arbitration agreement before submitting, you know, all the things that companies routinely do to put people on notice of contract terms. No question they could have done more, but I am wondering, so in your view, like basically this notice has no effect. Essentially, it doesn't put her on notice of what the specific terms of the contract that they are now trying to enforce are. I feel like you're breaking apart two pieces of the argument. The first part of their argument is, obviously, it doesn't put her on notice of the terms, but it puts her on inquiry notice that she should read the whole contract, scroll down, I'm sorry, read the whole application, scroll down, because there might be an arbitration agreement with terms somewhere else. It does not put her on notice that there are terms somewhere else on the page. It doesn't say anything about that. It just says this is subject to arbitration. And I think that that's especially important here where there are important terms, like the class action waiver that Tidelines is enforcing that are not mentioned at the top of the page and that someone, even if, you know, assuming for the sake of argument that it puts her on notice that it's subject to arbitration, it doesn't put her on notice that she's waiving her right to bring a class action. It doesn't put her on notice of any of the other terms of the arbitration agreement, which are important and are being enforced by Tidelines here against her. And so I think that it's important for contract formation to not just have this vague idea that it's subject to arbitration, but specifically what the terms of that arbitration agreement are. And nothing in that statement directs her to scroll down or directs her that there are more terms that she should read before clicking the submit button at the top of the page. And then even if, you know, there is notice of the terms of the contract, which there's not, there's no notice that clicking the submit button specifically would bind her to anything. For example, in the Nguyen case in the Ninth Circuit, the court held that even having a link to the terms of service right next to the button that you have to click to move on is not enough if that language next to the button doesn't indicate that clicking the button would bind the user to the terms. So here, there wasn't even a link to the terms, right? It just said subject to arbitration. And that's not enough without saying by clicking submit, you are agreeing to arbitration or something along those lines, which courts have upheld to put her on notice that clicking that submit button is going to bind her to a contract. And so just for the sake of clarification, you're not arguing that she didn't hit the submit button, right? That is not plaintiff's position in this case. Correct. She submitted her application. And where it turns out you might generate the same document, even if you never hit submit, is kind of irrelevant to this case. Right. I mean, I think they still, the Thailand's does have the burden of proving that an arbitration agreement was formed here. So I think it's relevant to their evidentiary burden. But why? But if the plaintiff is conceding she clicked the submit button, isn't that sufficient proof? Right. So in the context of Ms. Marshall, we don't dispute that she submitted an application. But I think, again, the key is that in submitting the application, she did not know the significance of that in terms of agreeing to any sort of binding contract because there was nothing on the page that put her on notice that clicking submit would bind her to anything. Well, counsel, your client knew that she was trying to work for this company, correct? Yes. And she knew from that notice that it was an agreement, right? It said agreement is subject to arbitration. Did it not? No, no, your honor. It said application is subject. An application is subject to arbitration. The application is subject to, only the application. The application and the application process. And anything related to the application, right, is subject to, correct? The top of the page said this application and application process are subject to arbitration under the South Carolina Arbitration Act and then it cited the act. So she had notice of that, correct? She had notice of that, but that is not notice of an offer to enter into a contract. There's nothing about that that says, you know. So what did she understand submitting it meant? She understood that submitting it meant that she was applying for employment at this company. And that's all? And that's all. How can you disjoin that? It said that the arbitration is subject to arbitration, the application process. So you're saying she only said, I'm going to forget about arbitration part, just application, right? That was her understanding. I'm only submitting an application without any agreement at all, subject to anything. How do you come to that? With a fair reading of that notice. So even if she read the notice that said it's subject to arbitration, that did not put her on notice that there was a specific contractual terms that she was being offered. And that's the agreement that Tylenz is trying to enforce now is not this vague idea that it's subject to arbitration. It's specific contractual terms that are included below the application. And she never had notice of those terms. She didn't have notice of important things she was giving up her right to bring a class action. Does she have access to it? She could, if she had known. Does she have access to the terms? Yes, I mean, she could have scrolled down. Which is just like a paper to continue to read, right? Let's go to, in my word, the dinosaur world I come from. It would have been a paper, reading it. 10 page, right? And it said the first page is, this is subject to an arbitration agreement. And then at the bottom, you could then go and sign it. So then you just go to page 10 and sign it. You could say, oh, I just went down and signed the bottom. I didn't read the middle part. Then you could say, I'm not on notice. Isn't that what you're saying? In that example, if she had been required to sign at the bottom of the application, then we wouldn't be here because she would have read through the arbitration term. She would have seen that it looked like a contract. And she would have been able to, she would have been required to read through everything and then sign at the bottom. Didn't she click the 2016? Didn't she click accept at the bottom? Yes, in 2016, she did click accept. And on the way to that click, there was the agreement, right? That's correct. But in 2020, she could not have been expected to, A, remember that she had done that in 2016. I mean, people fill out things all the time. They don't remember exactly what they look like or what they say. And there's nothing on the front page that she would have viewed that would put her on notice that there was any important legal language below the application that she was required to look at. It is fundamentally different from a paper application because with a paper application, you're more likely to know that you are being given a contract to sign. Whereas here, it looks just like a fillable website. It doesn't have anything on it that looks like a contract. And so, as the court recognized in the SPECT case, the fact that you're being offered a contract is different in the electronic context where it's less likely to look like a contract. And so, the website owner has the burden of making it clear that you are offering to somebody to enter into a contract. It's different than if you hand someone a four-page document and they know it's four pages and they can flip through and see that it looks like that there's a contract and then they have to sign at the end. Here, she was not required to sign at the end. And so, she did not have to scroll down and there was nothing at the top of the page that put her on notice that scrolling down was necessary  that were further down the page. Counsel, I may have misunderstood you, but I thought in your brief, you argued as to notice sort of two points. One, the thing you just said, there was nothing putting her on notice to scroll down. But two, even if she did scroll down, seeing the old 2016 agreement was not sufficient to put her on notice that there was a 2020 offer. But I heard you say something different just now, which was, look, if she scrolled down and hit submit at the bottom, we wouldn't be here. Sorry, I meant to say that if she scrolled down and signed at the bottom, which I thought was the hypothetical, then that would be fine. That's essentially what she did in 2016 because she clicked the accept button in 2016. So, if she clicked the accept button, I still don't understand why it's consistent with your brief to say that if she scrolled down and signed at the bottom underneath the arbitration agreement, the 2016 agreement would have put her on notice of the terms of a new agreement. So, what makes it the 2016 agreement is that the box is checked and next to it, it says, it has her signature, essentially. It has her signature already and then says 2016. And so, there's... She had signed that particular part. So, if she had, instead, there had been no date related to the agreement and she had signed that in 2020... Check that box. And check that box, that would have been a new agreement. But here, when she scrolled down, it looked like just the agreement she had already signed in 2016 and the box was already checked. And it said there was no way for her to know how to accept the agreement because the box was already checked. It was already signed. It already had a date next to it from 2016. It was highlighted, wasn't it? It let you know that was a part that you could change. Wasn't it highlighted on the page? The checkbox was highlighted, but next to it, where it had her signature and the date, that was not highlighted. And so, it's not clear... It was highlighted where it's a place where you could change it because it's a portal. It was unique to her. I guess, in the new world, it's called convenience. You got a portal, you can go to it. It's yours, unique. Write a number and she used it three times. It was the third time, right? Did we know of? Yes, I think... Right? And so, the second time she looked at this too, did she do the same thing too? Didn't go down and look at it? Only in 2016 was she required to scroll through the document and check the box at the bottom. All her subsequent applications showed her, if she had scrolled down, which there's no evidence that she did, if she had scrolled down for any of the subsequent applications, it would have shown her a checked box with her name, basically her signature, and the date next to it, indicating that she had already agreed to the agreement in 2016. There's nothing about that that puts her on notice that it's an offer to enter into a new agreement in 2020 or that by clicking submit, she's agreeing to anything new that she hadn't already agreed to. And I think that's the key. Again, there's no evidence that she did scroll down, but if she did, that is what she would have found. And that is not sufficient to put her on notice of how to accept the agreement. So to take your argument to me, logical extent, then you have to say that you thought, the client thought this was an old application when it said it was old, it was stale, four-year-old stale term when it said subject to arbitration. Yes, again, our position is that she didn't scroll down. But if she had scrolled down, yes, that is what she would have seen is that she already agreed in 2016 to something and that this was just showing her that she had already agreed. It wasn't putting her on notice that there's a new contract for 2020 that they're asking her to agree to. And- You all have an oral argument before the magistrate judge or the district judge? I'm actually not sure. I'm sorry. I was not trial counsel. Yeah, I didn't think so. This is the first time we've argued together. Yes. We have two opinions here. One from the magistrate judge called a recommendation and one from the district judge. They were based on paperwork. No oral argument like we're having here. Yes. Yes, that's correct. Okay. So, unless there's more questions about that, I just want to turn briefly to our argument that the court can affirm on the alternative ground that the 2020 agreement does not cover this dispute. A ruling on this issue would streamline the class certification proceedings below, and so we encourage the court to reach it. This dispute concerns discrimination that occurred after Ms. Marshall was offered and accepted a job, not during the application process. And Tideland's description of the job offer as conditional is factually wrong because the job offer sent to Ms. Marshall did not mention the physical agility test or other conditions. And with that, because there is no valid contract that covers this dispute, the district court's order should be affirmed. Thank you. Thank you, Ms. Leighton. Mr. Bright, you've saved some rebuttal time. Just two very quick points. Number one, on the point just made, all you have to do is look at the email from Julie Hill on July 14, 2020, which is after Ms. Marshall had submitted her application where she's told she has to go through a drug screen and a PAT test. And we look, and this is a quote from that, and it's in the record, look forward to completing your pre-employment requirements. It was clearly a conditional offer of employment, which is accepted by the ADA. No one gets hired until someone finally says, and all those things are finished, you get the job. So we think that's a disingenuous argument. But I want to go back to Justice Gregory's point. And I think you stated it more eloquent than I did when I said that in practical effect, what happened here is she was told that this agreement is subject to arbitration. As you suggested, Your Honor, she could have gone down and read through that document and see what it said. And what she would have seen is it would be language that says, both you and Tylen's Health agree to resolve any and all claims, disputes or controversies arising out of or relating to your application for employment and the application process exclusively by arbitration. The essence of their claim is she didn't read it. Therefore, she shouldn't be held accountable for it. And our position is she was given notice that there's an arbitration provision here. She should have looked farther. All she had to do was scroll down. She would have read it. And then by submitting her application and saying, please consider me for employment, for which the application itself says the quid pro quo is arbitration. She basically, by hitting submit, she was agreeing that I accept those terms. Can I ask you, and I'm sorry to keep coming back to the thing, but this is like sort of what hangs me up about this case. So she scrolls down. She sees this 2016 agreement. The magistrate judge actually issued two opinions in this case. And in the first one, when you were still arguing that the 2016 agreement governed the 2020 application, the magistrate judge found that there was no evidence to show that the 2016 agreement would apply to future job applications and no notice to the plaintiff that that would be so. You did not object to that ruling. Instead, you came up. You said, we have a new argument now. We'd like to try. And for whatever reason, the district court said, go ahead. Go back to the magistrate with your new argument. I am having trouble figuring out how the magistrate judge's first ruling, to which you did not object, doesn't sort of foreclose your argument that when she saw the 2016 agreement after she scrolled down, hypothetically, that would, in fact, have put her on notice that it applied in 2020. That's my hang-up. Tell me how to address it. Again, as a practical matter, what the result is the same. The arguments are different than the results would be the same. In 2020, what she did, in 2020, what she did is she went in with her unique password, opened it up. She looked at it. It says arbitration. And had she scrolled down, and you've got to remember, she'd seen it before. Had she scrolled down, she would have seen that binding language that says this is subject to arbitration.  Can I just take you back to the first thing you said? You said, look, the results would be the same. So you are saying that it is effectively as though the magistrate judge was wrong and the 2016 agreement does apply to all future job applications. If all we had was the 2016 application, no, it would not apply. We understand that. But what we have here is she started the process anew. Well, that's what you had when you were before the magistrate the first time. But OK, so it is effectively that if you reapply, the 2016 agreement does apply. And she should have known that. It's not that it applies. It's that you are on those. That there is an arbitration provision. You should read it. Right. And what you are reading is the 2016 agreement, which your argument is that gives you the terms for 2020. So in that sense, it does apply to all future job applications. I genuinely am just trying to figure out your arguments. Again, it's as if you had two pieces of paper. Again, I don't mean to frustrate you, but it's two pieces of paper. This one doesn't apply. This one is brand new. She's taking it off the internet and saying, I'm not going to stay. No matter what, she changed it. She changed it to say there are different dates at different jobs. And so now she's submitting a new application. That new application contains the exact same language as before. She's on notice of it because it says the topic of arbitration and the fact that she read it before. OK. So the terms of the 2016 agreement continue to apply because she was told to scroll down and solve them. Yes. OK. And by her comment, she was agreeing to that. Yep. Yep. I just want to make sure the date beside that, isn't that the date registered as the date she signed it? Not the date of the agreement. Now, what happens in the system is when she submitted that application, the system puts a date stamp on it for when she submitted that application. Right. It's like, for example, if you had a contract, you signed it four years earlier and your signature is on there. I suppose you could say, well, let it ride by submitting. I suppose they could say, well, I don't need to sign it again. I'm submitting this contract. But it doesn't say there's a new agreement. I mean, the agreement only applies for 2016, or does it? No, it doesn't. Again, I think that your point is the same one I've been trying to make, which is this is a new application, even though it is based on the old one. She is submitting it and she should be on notice to read through it. And once she reads through it, the arbitration language is abundantly clear so that when she hits submit, she's saying I'm agreeing to these terms. Thank you very much. Thank you very much. Thank both of you. We appreciate it. And I think we're going to want to come down and greet counsel today. We want to thank you for being here. Thank you for your work. Very much. And having said, Madam Clerk, we can adjourn. I hope no one's offended. I will avoid shaking hands because I'm coming down with something. But I would be pleased to have you come down. That's fine. We will adjourn court until tomorrow morning. Thank you. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, Roger L. Gregory, Pamela A. Harris